David RIGGS

v.

WARDEN, FEDERAL CORRECTIONAL
INSTITUTION, et al.

Civ. A. No. 79–0697–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Memorandum Aug. 31, 1979.

On Motion to Vacate Dismissal
Order Sept. 22, 1979.

David Riggs, pro se.

Raymond A. Carpenter, Asst. U. S. Atty.,
Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

David Riggs, an inmate confined at the Federal Correctional Institution in Petersburg, Virginia, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1970). The petition challenges the validity of his confinement at the Petersburg facility beyond the date of 30 August 1979.

In April of this year, the petitioner was accepted into a graduate program at Columbia University for the fall term. At the time he was notified of his acceptance, the petitioner was scheduled to be paroled on 21 November 1979. On 25 May 1979, the National Appeal Board of the United States Parole Commission reconsidered the petitioner's parole release date, set a presumptive parole date of 25 September 1979, and further indicated that the petitioner would be transferred to a community treatment center before his parole release to enable him to attend the graduate school. The

petitioner, however, was informed by the Board's decision that "your presumptive parole date is conditioned upon your maintaining good institutional conduct and the development of a suitable release plan. Prior to release, your case will be subject to review to ascertain that these conditions have been fulfilled."

It now appears that the Parole Commission is in the process of conducting a pre-release review. The petitioner alleges that he was informed of this fact on 8 August 1979. Furthermore, the petitioner states that he was advised the review would most likely result in the commencement of parole rescission proceedings based on the petitioner's involvement in institutional misconduct on 20 May 1979. The Institutional Disciplinary Committee, in a hearing conducted on 29 July 1979, found the petitioner guilty of possession of marijuana and assault on a staff member. The petitioner was given notice of these charges on 20 May. The hearing was delayed, according to the sworn affidavit of Thomas Slattery, Executive Assistant to the Warden at the Petersburg facility, because the matter had been referred to the Federal Bureau of Investigation and that agency's report was not released to the Correctional Institution until 25 July. Mr. Slattery states that it is the Bureau of Prison's policy not to undertake disciplinary action until the completion of any other investigations which may result in criminal charges. After finding that the petitioner had committed the acts charged, the Disciplinary Committee characterized the petitioner's offenses as of the greatest severity and referred the case to the Parole Commission with a recommendation that the petitioner's parole date be rescinded.

The petitioner contends that the Parole Commission should not be permitted to rescind their grant of presumptive parole because the institutional misconduct occurred on 20 May, and the Commission set his parole date on 25 May. The petitioner refers the Court's attention to the federal regulations governing parole, particularly 28 C.F.R. § 2.28 which provides that a regional parole commissioner may reopen a case at any time upon the receipt of new information. Since the institutional misconduct took place before the Parole Commission's action, the argument continues, the Commission is now without authority to reconsider its decision on the basis of this "old" information.

The Court finds that the applicable sections of the regulations are §§ 2.14 and 2.34, rather than § 2.28. In response to the petitioner's argument, however, the Parole Commission did not receive notice that the petitioner had violated institutional rules until this matter was referred to the Commission by the Disciplinary Committee after its 29 July hearing. A progress report on the petitioner's institutional adjustment was filed with the Parole Commission on 26 June, and the Commission was informed therein that charges had been brought against the petitioner for possession and assault. But the Commission was expressly advised not to consider the petitioner guilty of these charges since as yet there had been no official disposition. The fact that the petitioner had committed institutional infractions was "new information" when the Parole Commission was notified following the 29 July hearing.

Section 2.14(b) of the Code of Federal Regulations defines the purpose and establishes the procedure for a pre-release review in cases where a prisoner has been granted a presumptive parole date. To this extent, it provides authority for the Parole Commission to review the prisoner's institutional progress report "to determine whether the conditions of a presumptive release date by parole have been satisfied." As stated previously, the petitioner was informed of the Commission's authority to review its grant of presumptive parole in the 25 May communication. The petitioner's contention here, though, is that the Commission may not reconsider its decision within 60 days of the presumptive parole date. This argument follows from the petitioner's interpretation of 28 C.F.R. § 2.28(b)(1) which states the following rule:

At least sixty days prior to a presumptive parole date, an examiner panel shall re-

view the case on the record, including a current institutional progress report.

The respondents argue that the inescapable conclusion of the petitioner's interpretation is that prisoners who are within 60 days of their presumptive release date may commit institutional infractions at will since the Parole Commission cannot reconsider its decision after that point. This conclusion certainly does follow from the petitioner's logic, and the Court rejects both the conclusion and the logic.

Section 2.12(d) of the interim regulations currently applicable to federal parole specifically provides that "a presumptive parole date shall be contingent upon a continued record of good conduct and the establishment of a suitable release plan, and shall be subject to §§ 2.14 and 2.34." 44 Federal Register 3405 (January 16, 1979). This rule was previously set forth as § 2.12(e). Section 2.14(b) requires a pre-release review at least 60 days prior to the presumptive release date. However, Section 2.34(a) provides continuing authority for reconsideration up until the time of the delivery of the certificate of parole, immediately prior to release:

> When an effective date of parole has been set by the Commission, release on that date is conditioned upon continued satisfactory conduct by the prisoner. If a prisoner granted such a date has been found in violation of institution rules by an Institutional Disciplinary Committee or is alleged to have committed a new criminal act at any time prior to the delivery of the certificate of parole, the Regional Commissioner shall be advised promptly of such information. The prisoner shall not be released until the institution has been notified that no change has been made in the Commission's order to parole. Following receipt of such information, the Regional Commissioner may reopen the case and retard the parole date for up to 60 days without a hearing, or schedule a rescission hearing under this section on the next available docket at the institution or on the first docket following return to a federal insti-

tution from a community treatment center or a state or local halfway house. *Id.* at 3406.

Both the documents submitted by the respondent and the petitioner's own allegations demonstrate that the petitioner's institutional misconduct has been brought to the Parole Commission's attention. Under § 2.34(a), the respondent is therefore prohibited from releasing the petitioner until he has been notified that the Commission has made no change in its order to parole. According to the petitioner, he was informed through a Bureau of Prisons employee that the Parole Commission planned to initiate parole rescission proceedings and would stop the petitioner's transfer to a community treatment center. It does not appear that the respondent has received any response from the Parole Commission indicating that no change would be made. Quite to the contrary, it must be inferred from the petitioner's own allegations that a change in his parole release date is imminent.

It should be noted that the petitioner's challenge to modification of his presumptive release date goes to the issue of his confinement beyond 25 September 1979. That is the date he could have expected to be released on parole. Though the record does not indicate that the Parole Commission has actually gone forward with rescission proceedings at this point, it may retard the parole date for up to 60 days without a hearing. 28 C.F.R. § 2.34(a). Therefore, it is premature for the Court to determine whether the petitioner is unlawfully confined beyond the date set by the Parole Commission.

■ The issue in this case which relates to the petitioner's *immediate* confinement is whether he was unlawfully denied a transfer to a community treatment center in New York City by 30 August 1979. This is an issue cognizable under a petition for writ of habeas corpus because it directly concerns the petitioner's custody status. The petitioner claims an entitlement to placement in a community treatment center which derives from the Parole Commission's

statement on 25 May 1979 granting the petitioner "a presumptive parole on September 25, 1979 through a C.T.C. so as to attend graduate school." The petitioner also alleges that the United States Bureau of Prisons referred the petitioner for placement in a community treatment center at a specified address in New York City by 30 August 1979.

■ This latter allegation has little basis in fact. On 1 August, the petitioner's case manager wrote the director of the New York treatment center "referring" the petitioner to the facility. This referral was not in the nature of an actual assignment, as one would infer from the petitioner's allegation. It was rather a request that the petitioner be considered for placement at the treatment center. On 16 August, the Unit Manager at the Community Treatment Center responded that the petitioner had not been accepted for release through the center for the following reasons, as set forth in his letter:

1. The impending release date (09–25–79) will not permit proper programming following arrangements for transfer.

2. There is pending Parole Action in view of his having received a serious Incident Report.

3. There is no evidence that Mr. Riggs ever resided in this area, or has any resources in this area, nor is there any approval for relocation.

The petitioner's allegations also indicate that the Parole Commission is now opposed to his placement at the treatment center.

Regardless of the Parole Commission's position on the advisability of transferring the petitioner, it is clear that the authority to order a transfer rests with the Federal Bureau of Prisons and not the Parole Commission. A person convicted of a federal offense is committed to the custody of the Attorney General of the United States, who shall designate the place of confinement. 18 U.S.C. § 4082(a) (1970). The Attorney General has delegated this authority to the Director of the Federal Bureau of Prisons. 28 C.F.R. § 0.96(c). It appears in this case

that the petitioner's transfer was disapproved by an appropriate representative of the community treatment center to which the petitioner had been referred. The Court finds no basis to intervene in this decision. Accordingly, this petition for writ of habeas corpus will be denied and dismissed.

An appropriate order shall issue.

## ON MOTION TO VACATE
## DISMISSAL ORDER

This case again comes before the Court on the petitioner's motion to vacate the dismissal order of 31 August 1979. The petitioner states that the Court, in rendering its decision, failed to take note of an amendment to 28 C.F.R. § 2.12(d) which materially affects the result in this case. The petitioner is correct in saying that Section 2.12(d) was incorrectly set forth in the earlier decision. However, the amended provision does not alter the Court's opinion that the petitioner is not entitled to habeas relief.

To clarify matters from the outset, the regulations which were referred to in the earlier decision are contained in the 16 January 1979 issue of the Federal Register. These regulations became effective on 5 March 1979. Thus, while the petitioner states that the regulations were amended on 5 March, the amendments are those set forth in the 16 January Federal Register. The error in applying Section 2.12(d) occurred because Section 2.12 is amended at two different points in the Register. The amendment relettering the subsections is found at 44 Fed.Reg. 3405 and was noted for purposes of the decision. A second amendment, changing the substance of Section 2.12(e), is found at 44 Fed.Reg. 3407. The section becomes Section 2.12(d) by operation of the amendment at 44 Fed.Reg. 3405. The Court did not previously take notice of the substantive change, but will now consider its effect in this case.

As amended, Section 2.12(d) reads as follows:

A presumptive parole date shall be contingent upon an affirmative finding by the Commission that the prisoner has a continued record of good conduct and a suitable release plan and shall be subject to the provisions of §§ 2.14 and 2.28.

The petitioner was granted a presumptive parole date of 25 September 1979. This date was set by the National Appeal Board of the United States Parole Commission. A presumptive parole date, by the terms of Section 2.12(d), is a conditional grant of parole, subject to review. Section 2.14(b)(1), as amended provides that

At least 60 days prior to a presumptive parole date, the case shall be reviewed on the record, including a current institutional progress report.

If the prisoner passes the pre-release screening, Section 2.1(h) indicates that the "presumptive parole date" becomes an "effective parole date." In the present case, the petitioner contends that he has not received a pre-release review pursuant to Section 2.14(b)(1), so that he still has a presumptive parole date. He argues that neither Section 2.14 nor Section 2.28 allows for continuing authority for reconsideration within 60 days of a presumptive parole date.

The fact that the petitioner did not receive a pre-release review is central to his contention that he is entitled to release. In the motion to vacate, he acknowledges that, had he received a review as provided for by Section 2.14(b)(1), then there would be continuing authority for reconsideration. The petitioner specifically alleges that "it is only because the [Parole] Commission failed to fulfill the time requirement of Section 2.14(b)(1) . . . that they are presently without procedural authority to disturb that decision of the National Appeals Board." The petitioner thus seeks to obtain his release by means of a procedural default on the part of the Parole Commission.

■ The Court will not rule, as the petitioner suggests, that the failure to provide a pre-release review entitles a prisoner to release on his presumptive parole date regardless of whether there is intervening institutional misconduct. Given the circumstances of this case, the most sensible remedy would be to treat the presumptive parole date as an effective parole date. This would provide relief commensurate with the nature of the procedural error. As the petitioner admits, however, there is clearly authority under Section 2.34(a) to reconsider an effective parole date up until the delivery of the certificate of parole. The Court discussed the effect of Section 2.34 in detail in its earlier decision.

■ The petitioner maintains that application of the provisions of Section 2.34 would "desecrate" Section 2.28(b). There is more at stake here, however, than Section 2.28 of the federal regulations. The real concerns were summarized in a recent opinion from the Seventh Circuit:

While the Government should be alert and desirous of not keeping imprisoned a person beyond the time when all purposes of incarceration have been served it also has a very definite interest in rescinding an improper determination because it is the public which suffers when a convicted criminal, who should not have, reaches the freedom of an effective parole.

*Christopher v. United States Board of Parole,* 589 F.2d 924, 931 (7th Cir. 1978). Because the public interest involved is of such great weight, there must be continuing authority to review conditional parole grants, notwithstanding a failure to strictly comply with the procedures set out in the regulations. The Court therefore holds that the Parole Commission's authority derives from Section 2.34 and is an appropriate basis for rescinding parole in this case. The petitioner has challenged the application of Section 2.34 on the ground that his institutional misconduct occurred prior to the setting of his presumptive parole date, and he again raises this argument in the motion to vacate. The Court rejects the contention for the reasons set forth in the original decision.

The petitioner also seeks reconsideration of that portion of the decision dealing with the petitioner's allegation that he was unlawfully denied a transfer to a community

treatment center. However, the Court finds no reason to review its holding in that respect. The petitioner's motion to vacate is therefore DENIED.

AND IT IS SO ORDERED.